Citation Nr: 1710370 
Decision Date: 03/31/17 Archive Date: 04/11/17

DOCKET NO. 02-11 474 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUES

1. Entitlement to an increased initial rating for basal cell carcinoma of the left eyebrow, left cheek, left mid ear, right mid ear with disfigurement, evaluated as 10 percent disabling prior to July 15, 2015 and 80 percent disabling thereafter.

2. Entitlement to a total disability rating based upon individual unemployability (TDIU).


REPRESENTATION

Veteran represented by: The American Legion


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

T. Minot, Associate Counsel


INTRODUCTION

The Veteran had honorable active service in the United States Army from July 1951 to June 1954, July 1954 to July 1957, and June 1958 to May 1975. Among his decorations are the Combat Medical Badge and the Purple Heart Medal.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2001 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio, which granted service connection for basal cell carcinoma of the left eyebrow and assigned a 10-percent rating for that disability, effective January 16, 1996. The Veteran filed a Notice of Disagreement with the assigned rating in November 2001.

In August 2004, the Board, inter alia, remanded the issue of entitlement to an initial disability evaluation in excess of 10 percent for basal cell carcinoma of the left eyebrow for evidentiary development. In a June 2006 decision, the Board denied the claim. The Veteran filed an appeal to the United States Court of Appeals for Veterans Claims (Court). By Order dated in February 2008, the Court remanded the matter to the Board for compliance with the instructions included in a February 2008 Joint Motion for Remand (JMR).

In April 2009 and again in March 2015, the Board remanded the matter for evidentiary development. On remand, in a January 2016 rating decision, the RO closed out the Veteran's 10-percent rating for basal cell carcinoma of the left eyebrow, effective July 15, 2015, and awarded an 80-percent rating for residuals of basal cell carcinoma: left eyebrow, left cheek, left mid ear, and right mid ear with disfigurement, effective July 15, 2015. (Also of note, in an October 2013 rating decision, the RO granted service connection and assigned a 60-percent rating for "actinic, seborrheic, keratoses," effective November 21, 2011.) As the Veteran has not expressed satisfaction with the assigned disability ratings, his claim remains before the Board. See AB v. Brown, 6 Vet. App. 35, 38 (1993).

In May 2016, the Board once again remanded the matter for evidentiary development. The case now returns to the Board for review.

The Board notes that in January 2004, the Veteran testified at a Travel Board hearing before a Veterans Law Judge (VLJ) who is no longer employed at the Board. A transcript of the hearing is of record. In a January 2017 letter, the Veteran was notified that the VLJ who conducted his hearing was no longer employed at the Board. The letter stated that, pursuant to 38 U.S.C.A. § 7107(c) and 38 C.F.R. § 20.707, the law required that the VLJ who conducts a hearing on an appeal must participate in any decision made on that appeal, and as that person was no longer available, the Veteran's appeal would be assigned to another VLJ for a decision. The letter notified the Veteran of his right to request another optional Board hearing, and indicated that if he did not respond within 30 days, the Board would assume that he did not want another hearing and proceed accordingly. To date, the Veteran has not filed any correspondence indicating a desire for another hearing.

Finally, the Board notes that the Veteran submitted an application for TDIU (i.e., VA Form 21-8940) in September 2013. The Board is aware that a letter was sent to the Veteran in February 2015 purporting to acknowledge a "request by your phone call on February 12, 2015 to withdraw your claim for individual unemployability." However, no documentation of such a phone call is of record, and the Veteran has not otherwise expressed a desire to withdraw his application for TDIU. Viewing the facts in the light most favorable to the Veteran, the Board finds that the issue of entitlement to a TDIU remains in appellate status. See Rice v. Shinseki, 22 Vet. App. 447 (2009).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.


REMAND

Outstanding Medical Records

The Board finds that there are outstanding medical records which should be obtained prior to final adjudication of this matter. Specifically, the Veteran's most recent VA outpatient records reference appointments with a private dermatologist that are likely relevant to his claim; however, no attempt has been made to obtain these records. See VA Outpatient Treatment Notes (dated October 6, 2016 and August 17, 2016). Updated VA medical records should also be obtained and associated with the record. See 38 U.S.C.A. § 5103A; Sullivan v. McDonald, 815 F.3d 786, 793 (Fed. Cir. 2016).

Increased Rating for Basal Cell Carcinoma

The Veteran contends that his service-connected skin cancer, characterized as basal cell carcinoma of the left eyebrow, left cheek, left mid ear, and right mid ear, is more severe than what is reflected by his current disability rating. In addition, throughout the pendency of the appeal, he has reported multiple skin lesions and areas of malignant growth on his body which have not been determined to be part of his service-connected basal cell carcinoma, but which he nonetheless contends are due to his exposure to ionizing radiation during service. See, e.g., Board Hearing Transcript (January 2004); SSOC Expedited Action Attachment (November 2005); Correspondence from the Veteran (April 2016).

As an initial matter, the record clearly establishes that the Veteran was exposed to ionizing radiation in service. Specifically, historical records confirm that the Veteran was present at Operation UPSHOT-KNOTHOLE, a U.S. atmospheric nuclear test series conducted at the Nevada Test Site during 1953, and was exposed to measureable amounts of radiation at that time. See Correspondence from the Defense Threat Reduction Agency (December 2000). In January 1996, the Veteran filed a claim for service connection for "skin condition (pre-cancerous lesions)," which he asserted was "very possibly related to nuclear radiation." After extensive development, in July 2001, a memorandum from the Chief Public Health and Environmental Hazards Officer opined that "it is likely that the veteran's basal cell skin cancer can be attributed to exposure to ionizing radiation in service." Thereafter, service connection was established for basal cell carcinoma of the left eyebrow in August 2001. Thus, the record demonstrates that the Veteran was exposed to radiation in service, and that such radiation has been medically linked to his basal cell carcinoma.

In April 2016 correspondence, the Veteran reported that he had "continuing struggles from multiple cancers resulting from radiation exposure as a participant during a scheduled atomic detonation at Camp Desert Rock, Nevada." He noted that he had undergone treatments in early 2016 for malignant tissue in his right breast and left forearm. VA outpatient records confirm that he has been diagnosed with squamous cell carcinoma of the chest, left forearm, and right leg. See VA Outpatient Notes from Ann Arbor, Michigan (dated from June 2015 to May 2016). The Veteran asserts that these carcinomas (which, as noted above, are not included in his current disability rating) are related to his exposure to ionizing radiation during service.

The Board notes that the February 2008 JMR instructed VA to address the extent and severity of the Veteran's basal cell carcinoma, including all residuals thereof, in assigning him the appropriate disability rating. In keeping with this directive, the Board, in its May 2016 remand, instructed the RO to ascertain whether the Veteran's "currently diagnosed squamous cell carcinoma of the chest, left forearm, and right lower leg are manifestations of the service-connected basal cell carcinoma." See Colvin v. Derwinski, 1 Vet. App. 171 (1991) (the Board is prohibited from exercising its own independent judgment to resolve medical questions). The Veteran was subsequently afforded a VA Skin Diseases examination in June 2016.

The report from the June 2016 examination includes the following summary:

The veteran has a new diagnosis of squamous cell carcinoma to the chest, left forearm and right lower leg which the veteran had an excision done as a means of treating the cancer. The veteran's basal cell carcinoma has been recurrent since 1957, left cheek, left [ear] and left eyebrow and right ear. Treated with surgery and/or liquid nitrogen. No active basal cell lesions at this time but can reoccur at any moment. Currently in remission.

The examiner noted that "currently all cancers have been surgically removed," and opined that the Veteran's squamous cell carcinoma was less likely than not "incurred in or caused by the claimed in-service injury, event, or illness." By way of rationale, the examiner stated the following:

Sunlight exposure remains the most significant risk factor for Squamous Cell Carcinoma. Veteran retired from the service in 1975, 40 years ago. Review of available records cannot definitively link his sunlight and environmental exposure to his current diagnosis of Squamous Skin Cancer.

The examiner further noted that it was less likely than not that the Veteran's squamous cell carcinoma was "due to or the result of" his service-connected basal cell carcinoma. By way of rationale, the examiner stated, "Basal Cell Carcinoma does not cause squamous cell carcinoma." The examiner then noted that "Risk Factors for Squamous Cell carcinoma includes degree of sun exposure, in the past 5 to 10 years and Phenotypic characteristics such as fair skin, light-colored eyes, red hair, and Northern European origin." The examiner answered "No" when asked whether the Veteran's squamous cell carcinoma was at least as likely as not "aggravated beyond its natural progression" by his service-connected basal cell carcinoma. In support of this finding, the examiner repeated that "Basal Cell Carcinoma does not cause squamous cell carcinoma."

In October 2016, the Veteran underwent a VA Scars/Disfigurement examination to ascertain the nature and severity of his service-connected scars. The report noted a history of basal cell carcinoma in "multiple sites," and identified scars of the right lower leg (not yet healed), right breast, and left arm (two scars), as well multiple scars of the head, face, and neck. The Veteran reported that the carcinoma on his left eye area was "currently recurring"; the examiner did not comment on the veracity of this assertion. At the conclusion of his report, the examiner noted the following:

Other lesions of the trunk and extremities were noted and the Veteran insisted that these were due to surgeries that were also cancer related that were also due to the same radiation that caused the facial scars, yet one of them (the right lower leg lesion) was not even a scar but rather an open wound of the skin. The extent of his lesions, scars and benign neoplasia are so extensive and varied in location, that even the Veteran is unsure of where and how many skin cancer removal scars he has.

Notwithstanding this characterization of the Veteran's symptoms, the examiner provided no more details regarding the specific nature, severity, or etiology of these "[o]ther lesions." Subsequently, in correspondence received in December 2016, the Veteran repeated the claim that his cancers originated after he observed an atomic detonation during service.

After careful review, the Board finds that another VA examination is necessary in order to ensure that the evidence of record is adequate to decide the claim. See 38 C.F.R. § 19.9. At the outset, the Board notes that the October 2016 VA Scars/Disfigurement examination report (quoted above) indicates that the Veteran's basal cell carcinoma residuals may be more extensive than has been addressed by the VA examiners of record. However, the report is ambiguous regarding the etiology of the various other "lesions, scars and benign neoplasia" reported by the Veteran. As such, additional information is required for the Board to properly rate the Veteran's symptoms. See 38 C.F.R. § 4.2; Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (when VA undertakes to provide an examination or opinion, it must ensure that the examination or opinion is adequate). On remand, an examination is required to identify each specific skin lesion claimed by the Veteran and, if possible, establish their respective etiologies.

With respect to whether the Veteran's diagnosed squamous cell carcinomas (or any other skin cancers) are linked to his basal cell carcinoma or are otherwise related to service, the Board finds that the June 2016 VA Skin Diseases opinion (quoted above) is inadequate. See Barr, 21 Vet. App. at 312. First, in light of the October 2016 VA Scars/Disfigurement examination report, the June 2016 opinion fails to address the full breadth of the Veteran's skin cancer symptoms, and is therefore incomplete. In particular, the June 2016 opinion does not address the Veteran's contention that the carcinoma on his left eyebrow was "currently recurring."

Moreover, the June 2016 opinion contains no explanation whatsoever as to whether the Veteran's squamous cell carcinomas (or any of his other nonservice-connected skin-related symptoms) were caused by exposure to ionizing radiation. Rather, the opinion simply states that the examiner cannot "definitively link" the Veteran's in-service "sunlight and environmental exposure" to his current squamous cell carcinomas. As this finding disregards the Veteran's lay contentions and ignores the factual basis of the claim, it is inadequate and a new medical opinion is needed. See Reonal v. Brown, 5 Vet. App. 458, 460-61 (1993) (an opinion based upon an inaccurate factual premise has no probative value). On remand, as noted above, the examiner should identify each of the Veteran's claimed skin lesions and/or malignant growths and provide opinions as to whether they (1) originated in service, including as due to exposure to ionizing radiation, or (2) are manifestations of, or are caused or aggravated by, the Veteran's service-connected basal cell carcinoma.

TDIU

In September 2013, the Veteran submitted a formal application seeking entitlement to a TDIU. The Board has jurisdiction over this issue in light of the Court's determination that a TDIU is a component of a claim for an increased rating. See Rice v. Shinseki, 22 Vet. App. 447, 454-55 (2009). However, the issue of entitlement to a TDIU is inextricably intertwined with the claim for an increased rating on appeal, and therefore must be remanded as well.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Obtain outstanding VA medical records pertaining to the Veteran for the period from October 2016 to the present.

2. Ask the Veteran to identify and provide authorization to obtain any outstanding, relevant private medical records, to include records from private dermatologist/s. After securing the necessary authorization, these records should be requested. If any records are not available, the Veteran should be notified.

3. Schedule the Veteran for a VA examination with the appropriate specialist/s to ascertain the current nature and severity of his service-connected basal cell carcinoma, including any residuals thereof. The examiner should review the claims file. After examining the Veteran and conducting any studies and/or tests deemed necessary, the examiner should fully describe all symptomatology and functional deficits associated with this condition.

The examiner/s should examine any and all skin lesions and/or malignant growths, and identify all manifestations of basal cell carcinoma, squamous cell carcinoma, and any other skin cancers. The examiner/s should specifically reference the October 2016 VA Scars/Disfigurement examination report, including the examiner's comment that "The extent of [the Veteran's] lesions, scars and benign neoplasia are so extensive and varied in location, that even the Veteran is unsure of where and how many skin cancer removal scars he has."

The examiner/s should opine as to the following:

(a) Whether it is at least as likely as not that any of the identified skin lesions and/or malignant growths, to include squamous cell carcinomas of the chest, left forearm, and right leg and any other skin cancers, were incurred in or aggravated during service, to include as due to exposure to ionizing radiation. The examiner/s must accept as true that the Veteran was exposed to ionizing radiation in service.

(b) Whether it is at least as likely as not that any of the identified skin lesions and/or malignant growths, to include squamous cell carcinomas of the chest, left forearm, and right leg and any other skin cancers, were caused or aggravated by the Veteran's service-connected basal cell carcinoma.

4. After completing all indicated development, readjudicate the claims (including entitlement to a TDIU) in light of all the evidence of record. If any benefit sought on appeal remains denied, the RO should furnish to the Veteran and his representative a Supplemental Statement of the Case.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
YVETTE R. WHITE
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).