Citation Nr: 1811320 
Decision Date: 02/23/18 Archive Date: 03/06/18

DOCKET NO. 13-15 970 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Paul, Minnesota


THE ISSUE

Entitlement to service connection for the cause of the Veteran's death.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

F. Yankey Counsel


INTRODUCTION

The Veteran served on active duty from July 1966 to October 1970. He died in December 2012. The appellant is his surviving spouse.

This case comes before the Board of Veterans' Appeals (Board) on appeal of an April 2013 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Paul, Minnesota.

The appellant testified before the undersigned at an April 2014 Video Conference hearing. The hearing transcript is of record. 

In August 2015, the Board remanded the case for further development by the originating agency. The case has been returned to the Board for further appellate action.


FINDINGS OF FACT

1. The Veteran died in December 2012, due to colon cancer and renal cancer.

2. Neither colon cancer nor renal cancer was present during active duty or for years thereafter, and none of the disabilities was etiologically related to the Veteran's active military service. 

3. At the time of his death, the Veteran was service connected for diabetes mellitus, type II (DM), hypertension, coronary artery disease (CAD), peripheral neuropathy of the right lower extremity, peripheral neuropathy of the left lower extremity, peripheral neuropathy of the right upper extremity, peripheral neuropathy of the left upper extremity, scars, status post CAD bypass graft and erectile dysfunction.

4. None of the Veteran's service-connected disabilities played a material causal role in his death.


CONCLUSION OF LAW

The criteria for service connection for the cause of the Veteran's death are not met. 38 U.S.C. § 1310 (2012); 38 C.F.R. § 3.312 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify & Assist

There is no indication in this record of a failure to notify. See Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). 

In the context of a claim for Dependency and Indemnity Compensation (DIC) benefits, 38 C.F.R. § 5103(a) notice must include (1) a statement of the conditions, if any, for which a veteran was service connected at the time of his or her death; (2) an explanation of the evidence and information required to substantiate a DIC claim based on a previously service-connected condition; and (3) an explanation of the evidence and information required to substantiate a DIC claim based on a condition not yet service connected. Hupp v. Nicholson, 21 Vet. App. 342, 352-53 (2007). While there are particularized notice obligations with respect to a claim for DIC benefits, there is no preliminary obligation on the part of VA to conduct a predecisional adjudication of the claim prior to providing a section 5103(a)-compliant notice.

Pursuant to the duty to assist, VA must obtain "records of relevant medical treatment or examination" at VA facilities. 38 U.S.C. § 5103A(c)(2). All records pertaining to the conditions at issue are presumptively relevant. See Moore v. Shinseki, 555 F.3d 1369, 1374 (Fed. Cir. 2009); Golz v. Shinseki, 590 F.3d 1317 (Fed. Cir. 2010). In addition, where the veteran/claimant "sufficiently identifies" other VA medical records that he or she desires to be obtained, VA must also seek those records even if they do not appear potentially relevant based upon the available information. Sullivan v. McDonald, 815 F.3d 786, 793 (Fed. Cir. 2016) (citing 38 C.F.R. § 3.159(c)(3)). The Board remanded the appeal in August 2015, for a VA medical opinion. The opinion was submitted in October 2015. Furthermore, the appellant was afforded the opportunity to submit additional evidence as well as testify at a Board hearing, which was held in April 2014. Neither the information of record nor the contentions of the appellant suggest that additional pertinent information or evidence can be obtained in this case through further assistance from VA.

Legal Criteria

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a).

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table); see also Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); Hickson v. West, 12 Vet. App. 247, 253 (1999); 38 C.F.R. § 3.303.

Where a veteran served for at least 90 days during a period of war or after December 31, 1946, and manifests certain chronic disabilities, including cancer, to a degree of at least 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred or aggravated in service, even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309.

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza elements is through a demonstration of continuity of symptomatology. Barr v. Nicholson, 21 Vet. App. 303 (2007); see Clyburn v. West, 12 Vet. App. 296, 302 (1999). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. See Hickson, 12 Vet. App. at 253 (lay evidence of in-service incurrence sufficient in some circumstances for purposes of establishing service connection); 38 C.F.R. § 3.303(b). The theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic under 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

"Symptoms, not treatment, are the essence of any evidence of continuity of symptomatology." Wilson v. Derwinski, 2 Vet. App. 16, 19 (1991). Once evidence is determined to be competent, the Board must then determine whether such evidence is also credible. See Layno, supra (distinguishing between competency 
 ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted"). 

Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

In relevant part, 38 U.S.C. 1154(a) requires that VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability or death benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). The United States Court of Appeals for the Federal Circuit has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d at 1337 ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence").

As the appellant's claim is based, in part, on herbicide exposure during service in Vietnam, the provisions of 38 U.S.C. § 1116(a) (2012) and 38 C.F.R. § 3.309(e) (2017) are applicable. Such provisions provide for presumptive service connection on the basis of herbicide exposure for specified diseases manifested to a degree of 10 percent or more within a specified period in a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975. It also provides presumptive service connection on the basis of herbicide exposure for each additional disease that the Secretary determines in regulations prescribed under this section warrants a presumption of service-connection by reason of having a positive association with exposure to an herbicide agent, and that becomes manifest within the period (if any) prescribed in such regulations in a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975. 

Whenever the Secretary determines, on the basis of sound medical and scientific evidence, that a positive association exists between (A) the exposure of humans to an herbicide agent, and (B) the occurrence of a disease in humans, the Secretary shall prescribe regulations providing that a presumption of service connection is warranted for that disease for the purposes of this section. 38 U.S.C. § 1116(b)(1). 

In making determinations for the purpose of this subsection, the Secretary shall take into account (A) reports received by the Secretary from the National Academy of Sciences under section 3 of the Agent Orange Act of 1991, and (B) all other sound medical and scientific information and analyses available to the Secretary. In evaluating any study for the purpose of making such determinations, the Secretary shall take into consideration whether the results are statistically significant, are capable of replication, and withstand peer review. 38 U.S.C.§ 1116(b)(2). 

The diseases presumed to be associated with herbicide exposure include: chloracne or other acneform diseases consistent with chloracne, type 2 diabetes (also known as type II diabetes or adult-onset diabetes), Hodgkin's disease, ischemic heart disease (including, but not limited to, acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal's angina), all chronic B-cell leukemias (including, but not limited to, hairy-cell leukemia and chronic lymphocytic leukemia), multiple myeloma, non-Hodgkin's lymphoma, Parkinson's disease, early-onset peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx, or trachea), and soft-tissue sarcomas (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma). 38 C.F.R. § 3.309(e). 
An association between the occurrence of a disease in humans and exposure to an herbicide agent shall be considered to be positive for the purposes of this section if the credible evidence for the association is equal to or outweighs the credible evidence against the association. 38 U.S.C. § 1116(b)(3).

Colon cancer and renal cancer are not among the diseases specified in 38 U.S.C. § 1116(a). In addition, the Secretary has not determined, on the basis of sound medical and scientific evidence, that a positive association exists between (A) the exposure of humans to an herbicide agent, and (B) the occurrence of colon cancer or renal cancer in humans. See 38 C.F.R. § 3.309(e). Notwithstanding the inapplicability of the Agent Orange presumptive service connection regulations, in this case the Board is obligated to fully consider the appellant's claim on a direct service connection basis. See Combee v. Brown, 34 F.3d 1039, 1043-44 (Fed. Cir. 1994).

DIC benefits are payable to the surviving spouse of a veteran if the veteran died from a service-connected disability. 38 U.S.C. § 1310 (2012); 38 C.F.R. § 3.5 (2017). 

The death of a veteran will be considered as having been due to a service-connected disability when the evidence establishes that such disability was either the principal or a contributory cause of death. The issue involved will be determined by exercise of sound judgment, without recourse to speculation, after a careful analysis has been made of all the facts and circumstances surrounding the death of the veteran, including, particularly, autopsy reports. 38 C.F.R. § 3.312(a) (2017). 

The service-connected disability will be considered as the principal (primary) cause of death when such disability, singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto. 
38 C.F.R. § 3.312(b) (2017). 

A contributory cause of death is inherently one not related to the principal cause. In determining whether the service-connected disability contributed to death, it must be shown that it contributed substantially or materially; that it combined to cause death; that it aided or lent assistance to the production of death. It is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection. 38 C.F.R. § 3.312(c)(1) (2017); see also Gabrielson v. Brown, 7 Vet. App. 36, 39 (1994).

Analysis

The certificate of death indicates that the Veteran died in December 2012. The immediate cause of death was certified to be colon cancer, with renal cancer as an underlying cause of death.

The appellant does not contend, and the record does not show, that the Veteran's colon cancer or renal cancer was incurred in service. In this regard, service treatment records do not contain evidence of colon or renal cancer during active duty or at the time of the Veteran's discharge from service. Furthermore, neither colon cancer nor renal cancer may be presumed incurred during active military service, as there is no evidence that the Veteran manifested colon cancer or renal cancer to a degree of at least 10 percent disabling within one year after his active military service. See 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309(a). Also, the record does not contain a medical opinion linking the Veteran's fatal colon or renal cancer to his military service.

The appellant contends that service connection is warranted for the cause of the Veteran's death because the Veteran's death is a consequence of exposure to herbicides during active duty service in Southeast Asia, and because his service-connected diabetes mellitus, type II (DM) and coronary artery disease (CAD) complicated his treatment for his cancer, which caused his death.

Because the Veteran served in Vietnam, his exposure to herbicides is presumed. 
38 C.F.R. § 3.307(a)(6)(iii). However, VA regulations do not provide for presumptive service connection, based on Agent Orange exposure, for colon cancer or renal cancer. See 38 C.F.R. § 3.309(e) (2017). 

The appellant also argues that the Veteran's service-connected DM and CAD complicated his treatment for the cancer that caused his death. At the time of his death, the Veteran was service-connected for DM, rated as 20 percent disabling; hypertension, rated as 20 percent disabling; CAD, status post coronary artery bypass graft, rated as 10 percent disabling; peripheral neuropathy of the right lower extremity, rated as 20 percent disabling; peripheral neuropathy of the left lower extremity, rated as 10 percent disabling; peripheral neuropathy of the right upper extremity, rated as 10 percent disabling; peripheral neuropathy of the left upper extremity, rated as 10 percent disabling; scars, status post coronary artery bypass graft, rated as noncompensably disabling; and erectile dysfunction, rated as noncompensably disabling. Significantly, none of his service-connected disabilities, including his DM or CAD, are listed as a main or contributory cause of death on his death certificate. Furthermore, the Board finds that there is no evidence of record which shows a relationship between the Veteran's service-connected disabilities and the cause of his death. There is no medical evidence of record showing that any of the Veteran's service-connected disabilities had actually increased in severity prior to his death, and no evidence of record to show that the Veteran was totally and permanently disabled due to his service-connected disabilities alone. Moreover, the evidence of record does not show that any of the Veteran's service-connected disabilities contributed to any of the cancers that caused his death.

In accordance with the Board's August 2015 remand, an October 2015 VA examiner reviewed the Veteran's records and rendered an opinion on the relationship between the Veteran's service-connected disabilities and the cause of his death. The examiner concluded that there is no evidence to suggest or support a finding that the Veteran's service connected DM and CAD contributed substantially or materially to his death. The examiner also opined that the Veteran's service connected conditions did not complicate his cancer treatment. In rendering the opinion, the examiner noted that the Veteran was evaluated by cardiology and was found to have no symptomatic ischemic heart disease complicating his clinical course. He had no chest pain or other clinical symptoms suggestive of decompensation of his underlying heart disease. He was evaluated by internal medicine and his diabetes was under control with treatment. Therefore, there is no evidence of complications of his treatment due to diabetes. The examiner also concluded that the Veteran's exposure to Agent Orange, with subsequent diagnoses of ischemic heart disease and DM, felt to be due to Agent Orange, did not contribute to the Veteran's death. Further, the underlying renal cancer did not contribute to death since there was no objective evidence that this cancer was active at the time of death.

There is no other competent evidence of record indicating that the Veteran's service-connected disabilities, including DM and CAD, caused or contributed to his death, or caused an increase in the severity of any of the medical problems which did cause his death. Accordingly, the Board must conclude that the preponderance of the evidence is against the appellant's claim and the claim must be denied.


ORDER

Service connection for the cause of the Veteran's death is denied.



____________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs